ORIGINAL

Approved: *Gina Castellano*
           GINA CASTELLANO
           Assistant United States Attorney

**16 MAG 1374**

Before:    THE HONORABLE SARAH NETBURN
           United States Magistrate Judge
           Southern District of New York

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA    :  COMPLAINT

   - v. -                        :  Violations of 18 U.S.C.
                               :  §§ 371, 922(a), 924(n),
GUSTAV KLOSZEWSKI,            :  and 2
   a/k/a "Gus,"                  :
                               :  COUNTY OF OFFENSE:
          Defendant.         :  BRONX

- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

       SCOTT T. CUNNINGHAM, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA") and charges as follows:

COUNT ONE
(Firearms Trafficking Conspiracy)

      1.   From at least on or about February 16, 2016, up to and including at least on or about February 26, 2016, in the Southern District of New York and elsewhere, GUSTAV KLOSZEWSKI, a/k/a "Gus," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, trafficking in firearms in violation of Title 18, United States Code, Section 922(a)(1)(A).

      2.   It was a part and an object of the conspiracy that GUSTAV KLOSZEWSKI, a/k/a "Gus," the defendant, and others known and unknown, not being licensed importers, licensed manufacturers, or licensed dealers of firearms within the meaning of Chapter 44, Title 18, United States Code, would and did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business would and did ship,

1

transport, and receive firearms in interstate and foreign commerce, in violation of Title 18, United States Code, Section 922(a)(1)(A).

OVERT ACT

3. In furtherance of said conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

    a. On or about February 16, 2016, co-conspirators of GUSTAV KLOSZEWSKI, a/k/a "Gus," the defendant, transported a firearm from Florida to the Bronx, New York for the purpose of illegally selling the firearm.

(Title 18, United States Code, Section 371.)

COUNT TWO
(Firearms Trafficking)

4. From at least on or about February 16, 2016, up to and including at least on or about February 26, 2016, in the Southern District of New York and elsewhere, GUSTAV KLOSZEWSKI, a/k/a "Gus," the defendant, not being a licensed importer, licensed manufacturer, or licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, would and did willfully and knowingly engage in the business of dealing in firearms, and in the course of such business would and did ship, transport, and receive firearms in interstate and foreign commerce, to wit, the defendant aided and abetted the transportation of firearms from Florida to New York for the purpose of illegally selling the firearms.

(Title 18, United States Code, Sections 922(a)(1)(A), 924(n) and 2.)

COUNT THREE
(Interstate Transportation of Firearms)

5. On or about February 16, 2016 and on or about February 24, 2016, in the Southern District of New York and elsewhere, GUSTAV KLOSZEWSKI, a/k/a "Gus," not being a licensed importer, licensed manufacturer, licensed dealer or licensed collector of firearms within the meaning of Chapter 44, Title 18, United States Code, willfully and knowingly did transfer, sell, trade, give, transport, and deliver firearms to another individual,

said person not being a licensed importer, licensed manufacturer, licensed dealer or licensed collector of firearms within the meaning of Chapter 44, Title 18, United States Code, and knowing and with reasonable cause to believe that said person was not then residing in the State of Florida, the State in which the defendant was residing at the time of the aforesaid transfer, sale, trade, giving, transportation, and delivery of the firearms, to wit, the defendant aided and abetted the transportation of firearms from Florida to New York for the purpose of illegally selling the firearms.

(Title 18, United States Code, Sections 922(a)(5) and 2.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

6. I am a Special Agent with the DEA, based in New York, New York. I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with other law enforcement officers and agents and my examination of documents, reports, and other records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

7. Since on or about February 16, 2016, the DEA and the Bureau of Alcohol, Tobacco, Firearms and Explosive ("ATF") have been investigating an arms trafficking organization that obtains firearms in Florida and transports the firearms to the Southern District of New York and elsewhere for sale. Based on my participation in this investigation, I am aware of the following, among other things.

a. On or about February 16, 2016, at approximately 10:00 p.m., a confidential source ("CS-1")[1], acting at the direction of the DEA, contacted an individual from whom he had purchased narcotics in the past ("CC-1"). CC-1 informed CS-1, in substance and in part, that CC-1 had firearms for sale.

---

[1] CS-1 is paid in U.S. currency in exchange for providing information to law enforcement agents. CS-1 has provided reliable information in the past.

3

   b.   On or about February 17, 2016, at approximately 12:20 p.m., at the direction of the DEA, CS-1 met with CC-1 and a co-conspirator of CC-1 ("CC-2") in the vicinity of 508 W. 37th Street in Manhattan, New York. During the meeting, CC-2 communicated with a third co-conspirator ("CC-3") using Facetime. During the Facetime communication, CC-2 showed CS-1 the screen of his phone and CS-1 observed CC-3 in what appeared to be a hotel room with what appeared to be several firearms displayed on a bed. At the direction of the DEA, CS-1 expressed an interest in purchasing the firearms.

   c.   On or about February 17, 2016, at approximately 4:35 p.m., at the direction of the DEA, CS-1 met with CC-1, CC-2, and CC-3 in a parking lot on the corner of 225th Street and Broadway in the Bronx, New York (the "Parking Lot") to purchase the following: (i) a semi-automatic AR-15 rifle with an extended magazine; (ii) a .30 caliber semi-automatic rifle; (iii) a Remington 12-gauge shotgun; (iii) a Ruger .223 semi-automatic rifle; (iv) a Sig Sauer .22 caliber semi-automatic handgun; (v) two 50 round "drum" style magazines; (vi) a 30 round .223 caliber magazine; (vii) a .9mm 50 round magazine; and (viii) several .22 caliber rounds (together, the "February 17 Firearms").

   d.   Other law enforcement agents surveilled the meeting and debriefed CS-1 following the meeting. Based on my conversations with other law enforcement agents, I learned the following: (i) CC-1 and CC-2 arrived to the Parking Lot in a vehicle ("Vehicle-1"); (ii) CS-1 entered Vehicle-1; (iii) CC-3 exited a second vehicle ("Vehicle-2"), removed the February 17 Firearms, which were rolled in a blanket, from the trunk of Vehicle-2, and placed the February 17 Firearms in the trunk of Vehicle-1; (iv) CC-3 then entered Vehicle-1 and stated, in substance and in part, that she was going to be back from Florida next week and that she would have additional firearms for sale; (v) CS-1 then handed $3,000 to CC-1 and retrieved the February 17 Firearms from the trunk of Vehicle-1.

   e.   On or about February 17, 2016, at approximately 7:00 p.m., CS-1 received a call from CC-3. CC-3 stated, in substance and in part, that she would be back in New York next week, she would have additional firearms for sale, and CS-1 should contact her directly to set up a meeting to purchase the firearms.

   f.   On or about February 24, 2016, CS-1 communicated with CC-3 via text message and set up a meeting for

4

approximately 7:30 p.m. in the vicinity of a gas station on I-87 North in the Bronx, New York. Law enforcement agents and I surveilled the meeting. Based on my participation in the surveillance, my conversations with other law enforcement agents, and my debrief of CS-1 and another confidential source who participated in the meeting ("CS-2"), I learned the following: (i) CS-1 and CS-2 arrived together in a van ("Van-1"); (ii) CC-3 and a fourth co-conspirator ("CC-4") arrived together in a white rental vehicle, which CC-4 was driving ("Rental Car-1"); (iii) CC-3 instructed CS-1 and CS-2 to follow CC-3 and CC-4 to a storage facility; (iv) CS-1 and CS-2, in Van-1, followed CC-3 and CC-4, in Rental Car-1, to a storage location in Suffern, New York; (v) at the storage location, CS-2 accompanied CC-3 into a storage unit (the "Storage Unit") where he purchased two firearms from CC-3 for approximately $1,300.

        g.    After CC-3 reentered Rental Car-1 and CC-3 and CC-4 began to drive away, law enforcement agents stopped Rental Car-1. CC-3 then gave oral and written consent for law enforcement personnel to search the Storage Unit. During the search of the Storage Unit, law enforcement agents recovered an additional six firearms. In total, on or about February 24, 2016, law enforcement agents seized the following firearms: (i) a Tec-9, 9mm automatic pistol; (ii) a .45 caliber Derringer pistol; (iii) two 9mm semi-automatic pistols; (iv) a .45 caliber semi-automatic pistol; (v) a USP Compact .45 caliber automatic pistol; (vi) a Tactical Superiority, INC, .223 caliber semi-automatic rifle; and (vii) a .38 special caliber Derringer pistol.

        h.    CC-3 was then advised of her *Miranda* rights. CC-3 provided a verbal and written waiver of her *Miranda* rights. Thereafter, CC-3 stated to law enforcement agents, in substance and in part, the following:

        i.    CC-3 lives in New York;

        ii.    CC-3 and CC-4 obtain firearms in Miami, Florida from GUSTAV KLOSZEWSKI, a/k/a "Gus," the defendant, drive the firearms from Florida to New York in a rental vehicle, and sell the firearms in New York;

        iii.    CC-3 and CC-4 receive the firearms from KLOSZEWSKI on consignment and typically deposit the proceeds from the firearms sales directly into KLOSZEWSKI's bank account;

        iv.    CC-3 and CC-4 have been selling firearms for KLOSZEWSKI for approximately two years; and

     v. KLOSZEWSKI, CC-3, and CC-4 are planning to rob narcotics and firearms from a Florida stash house on Friday, February 26, 2016.

   i. CC-3 then, at the direction of DEA, placed a consensual recorded call to KLOSZEWSKI. Based on my review of the recorded call, my conversations with CC-3, and my conversations with other law enforcement agents, I have learned the following:

     i. CC-3 stated, in substance and in part, that she would arrive in Florida on Friday and asked if KLOSZEWSKI wanted to do "it" on Friday, referring to the stash-house robbery. KLOSZEWSKI responded, in substance and in part, that when CC-3 arrived in Florida he would "take [her] down there and show [her] all the scenarios."

     ii. KLOSZEWSKI questioned, in substance and in part, whether CC-3 sold all of the firearms that she took to New York. CC3, responded, in substance and in part, that she had more firearms to sell, she sold three firearms for $1,300, and she was planning to deposit $1,000 of the firearms proceeds in KLOSZEWSKI's bank account.

     iii. CC-3 further stated, in substance and in part, that she would arrive in Florida on Friday "so [they] could do it by dusk," referring to the stash-house robbery. KLOSZEWSKI responded, "It should be good because it's supposed to be cold Friday so everybody else's windows will be closed."

   j. On or about February 26, 2016, at approximately 2:00 p.m., CC-3, at the direction of DEA, placed a second consensual recorded call to KLOSZEWSKI. Based on my review of the recorded call and debrief of CC-3 following the call, I have learned the following:

     i. CC-3 informed KLOSZEWSKI, in substance and in part, that she and CC-4 were in the vicinity of Jacksonville, Florida;

     ii. KLOSZEWSKI stated, in substance and in part, that CC-3 had not deposited the firearms proceeds in his bank account. CC-3 responded, in substance and in part, that she was bringing the $1,000 with her and that she owes KLOSZEWSKI an additional $1,300 from prior firearms sales;

     iii. KLOSZEWSKI stated, in substance and in part, that additional co-conspirators sold approximately ten

6

firearms but that KLOSZEWSKI did not receive any proceeds from those sales; and

        iv. CC-3 stated, in substance and in part, that they should do "it" on Sunday at dusk, referring to the stash-house robbery. KLOSZEWSKI responded, in substance and in part, that Sunday at dusk would be good because it would be cold and windows would be closed. KLOSZEWSKI further stated, in substance and in part, that he will take CC-3 to see the stash house in advance on the robbery.

    k. On or about February 26, 2016, at approximately 9:20 p.m., CC-3 and CC-4 met with KLOSZEWSKI and another co-conspirator in the vicinity of a parking lot in Miami, Florida. Other law enforcement agents and I surveilled the meeting and debriefed CC-3 following the meeting. Based on my participation in surveillance and debrief of CC-3 following the meeting, I learned that during the meeting (i) CC-3 gave KLOSZEWSKI $1,000 of pre-recorded buy money that had been provided to CC-3 by ATF; and (ii) KLOSZEWSKI provided details regarding the layout of the stash house.

    l. Law enforcement agents then stopped KLOSZEWSKI and recovered the $1,000 of pre-recorded buy money from his person.

    8. An ATF Agent has confirmed to me that the ATF searched a national database of ATF license holders and there are no records of or entries with respect to an application for or issuance of a firearms license to GUSTAV KLOSZEWSKI, a/k/a "Gus," the defendant, within New York or Florida for the period of February 2016.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of GUSTAV KLOSZEWSKI, a/k/a "Gus," the defendant, and that he be imprisoned or bailed, as the case may be.

S/
_____
SCOTT T. CUNNINGHAM
Special Agent
Drug Enforcement Administration

Sworn to before me this
27th day of February, 2016

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

Sworn to me over
the telephone
pursuant to Fed. R.
Crim. P. 4.1.