UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA              :
:
   - v. -                                          :
:  **16 Cr. 200 (AKH)**
GUSTAV KLOSZEWSKI,                    :
:
            Defendant.        :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANT GUSTAV KLOSZEWSKI'S MOTION FOR AN AUDIBILITY HEARING, A BILL OF PARTICULARS AND DISCOVERY

 

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Gina Castellano
Assistant United States Attorney
   *Of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 1

I.     Offense Conduct ................................................................................................................ 1

II.    Post-Indictment Discovery ................................................................................................ 3

ARGUMENT .................................................................................................................................. 5

I.     THE COURT SHOULD NOT SUPPRESS THE AUDIO RECORDINGS OF THE
       FEBRUARY 26, 2016 MEETING ..................................................................................... 5

II.    THE COURT SHOULD DENY KLOSZEWSKI'S REQUEST FOR A BILL OF
       PARTICULARS .................................................................................................................. 7

III.   NO ADDITIONAL DISCOVERY IS WARRANTED AT THIS TIME ......................... 10

CONCLUSION ............................................................................................................................. 13

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to defendant Gustav Kloszewski's motion for (1) an audibility hearing to determine the admissibility of a tape recording of a February 26, 2016 meeting of the defendant and his co-conspirators (the "February 26 Recording"); (2) an order requiring the Government to provide a bill of particulars; and (3) an order for additional discovery, including, among other things, discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure, and material pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963) and *Giglio* v. *United States*, 405 U.S. 150 (1972). The Court should deny the defendant's motion in its entirety.

**BACKGROUND**

On February 27, 2016, the defendant Gustav Kloszewski, a/k/a "Gus," was charged in complaint 16 Mag. 1374 (the "Complaint") with firearms trafficking conspiracy, in violation of 18 U.S.C. § 371, firearms trafficking, in violation of 18 U.S.C. § 922(a)(1)(A), and interstate transportation and receipt of firearms, in violation of 18 U.S.C. § 922(a)(5). On March 10, 2016, a Grand Jury in this District returned indictment 16 Cr. 200 (AKH) (the "Indictment"), charging Kloszewski with the same crimes charged in the Complaint.

**I.     Offense Conduct**

The charges in the Complaint and the Indictment stem from an investigation by the Drug Enforcement Administration ("DEA") and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") into a firearms trafficking conspiracy during which the defendant and his co-conspirators transported firearms from Florida to the Bronx, New York for sale. As detailed in the Complaint and the discovery provided to the defendant, on or about February 17, 2016, a confidential source working at the direction of the DEA ("CS-1") met with a co-conspirators of the defendant and purchased the following for $3,000: (i) a semi-automatic AR-15 rifle with an

extended magazine; (ii) a .30 caliber semi-automatic rifle; (iii) a Remington 12-gauge shotgun; (iii) a Ruger .223 semi-automatic rifle; (iv) a Sig Sauer .22 caliber semi-automatic handgun; (v) two 50 round "drum" style magazines; (vi) a 30 round .223 caliber magazine; (vii) a .9mm 50 round magazine; and (viii) several .22 caliber rounds. (Complaint at 7(b)-(d).)

Following the meeting, one of the co-conspirators ("CC-3"), informed CS-1 that she would be back from Florida the following week and would have additional firearms for sale. (*Id.* at 7(e).) On or about February 24, 2016, CS-1 and another confidential source ("CS-2"), acting at the direction of the DEA, met with CC-3 and another co-conspirator ("CC-4") to purchase additional firearms. (*Id.* at 7(f).) CS-2 purchased two additional firearms from CC-3 in a storage unit. (*Id.*) Following the controlled purchase, law enforcement stopped CC-3 and CC-4. CC-3 provided consent to search the storage unit and law enforcement subsequently seized six additional firearms from the unit. (*Id.* at 7(g).)

CC-3 was then advised of her *Miranda* rights and provided a written and verbal waiver of her rights. (*Id.* at 7(h).) C-3 stated to law enforcement agents, in substance and in part, the following: (i) CC-3 lives in New York; (ii) CC-3 and CC-4 obtain firearms in Miami, Florida from the defendant, drive the firearms from Florida to New York in a rental vehicle, and sell the firearms in New York; (iii) CC-3 and CC-4 receive the firearms from the defendant on consignment and typically deposit the proceeds from the firearms sales directly into the defendant's bank account; (iv) CC-3 and CC-4 have been selling firearms for the defendant for approximately two years; and (v) the defendant, CC-3, and CC-4 were planning to rob narcotics and firearms from a Florida stash house on Friday, February 26, 2016. (*Id.*)

CC-3 then, at the direction of DEA, placed a consensual recorded call to the defendant. (*Id.* at 7(i).) During the call, the defendant questioned, in substance and in part, whether CC-3

sold all of the firearms that she took to New York.  CC3, responded, in substance and in part, that she had more firearms to sell, she sold three firearms for $1,300, and she was planning to deposit $1,000 of the firearms proceeds in the defendant's bank account. (*Id.*)

On or about February 26, 2016, at approximately 2:00 p.m., CC-3, at the direction of DEA, placed a second consensual recorded call to the defendant. (*Id.* at 7(j).) During the call the defendant stated, in substance and in part, that CC-3 had not deposited the firearms proceeds in his bank account.  CC-3 responded, in substance and in part, that she was bringing the $1,000 with her and that she owed the defendant an additional $1,300 from prior firearms sales.  The defendant also stated, in substance and in part, that additional co-conspirators sold approximately ten firearms but that the defendant did not receive any proceeds from those sales. (*Id.*)

 On or about February 26, 2016, at approximately 9:20 p.m., CC-3 and CC-4, at the direction of the DEA, met with the defendant in the vicinity of a parking lot in Miami, Florida, and then travelled to another location where they met with another co-conspirator ("CC-5"). (*Id.* at 7(k).)  During the recorded meeting: (i) CC-3 gave the defendant $1,000 of pre-recorded buy money that had been provided to CC-3 by ATF; (ii) the defendant, CC-3 and CC-4 discussed the firearms that were sold in New York; and (iii) the defendant, CC-3, CC-4, and CC-5 discussed the firearms that were still in New York, the firearms that had not yet been sold, and firearms that they believed were missing. (*Id.*)

Law enforcement agents then arrested the defendant and subsequently recovered the $1,000 of pre-recorded buy money from his person. (*Id.* at 7(l).)

**II.    Post-Indictment Discovery**

On or about March 23, 2016, the Government made its first Rule 16 production to the defendant.  The discovery included the following categories of material:  (i) charging

3

instruments; (ii) consensual recorded phone calls between the defendant and his former co-conspirators; (iii) the February 26 Recording; (iv) subscriber information for the cellphone number believed to be used by the defendant; (v) an application and order for cellphone location and pen register information for the cellphone number believed to be used by the defendant; (vi) copies of prerecorded buy money recovered from the defendant at the time of his arrest; and (vii) the defendant's criminal history. In the accompanying discovery letter, the Government informed the defendants that the Government recognized its obligations under *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its progeny, that to date it was unaware of any *Brady* material, and that it would provide timely disclosure if any such material came to light. The Government also told the defendants that it would provide material under *Giglio* v. *United States*, 405 U.S. 150, 154 (1972) in a timely manner prior to trial.

The Government supplemented its initial disclosure of Rule 16 discovery in a timely fashion and as additional materials became available to the Government. On or about April 6, 2016, the Government produced to the defendant (i) copies of access devices and money orders seized from the defendant at the time of arrest, as well as property vouchers for the same; (ii) video recordings of a post-arrest interview of the defendant; (iii) a copy of the Advice of Rights form signed by the defendant on February 27, 2016; (iv) copies of prerecorded buy money from the February 24, 2016 controlled purchase of firearms from the defendant's co-conspirators; (v) affidavit and search warrant for the five cellphones seized from the defendant at the time of his arrest.

On or about April 7, 2016, the Government produced to the defendant property vouchers for the firearms and ammunition purchased and seized in connection with the investigation. On or about May 3, 2016, the Government produced to the defendant (i) additional property

vouchers and (ii) the results of the search warrant on the defendant's phones.  On or about June 1, 2016, the Government produced to the defendant reports from the New York City Police Department Police Laboratory Firearms Analysis Section.  At this time, the Government is not aware of additional Rule 16 discovery.

## ARGUMENT

### I. THE COURT SHOULD NOT SUPPRESS THE AUDIO RECORDINGS OF THE FEBRUARY 26, 2016 MEETING

As detailed above, the Government has produced three recordings to the defendant  (a) the February 24, 2016 consensual recorded call between CC-3 and the defendant discussing, among other things, firearms sales and proceeds; (ii) the February 26, 2016 consensual recorded call between CC-3 and the defendant discussing firearms proceeds; and (iii) the February 26 Recording.  The Court has not yet set a trial date, and the Government has not yet identified which, if any, recordings, or portions of recordings, it will introduce at trial.  As such, the defendant's motion for an audibility hearing as to the February 26 Recording is premature.  In any event, the February 26 Recording is not so inaudible as to render it inadmissible.

#### A. Applicable Law

As the Second Circuit has held, "[a] tape recording is not inadmissible merely because portions of it are inaudible."  *See United States* v. *McDonald*, 198 F.3d 235, at \*2 (2d Cir. 1999). The decision whether to admit a recording is left to the sound discretion of the trial judge, and a recording should be admitted "[u]nless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy."  *See United States* v. *Bryant*, 480 F.2d 785, 790 (2d Cir. 1973).  The Second Circuit has expressed a "clear preference for the admission of recordings

5

notwithstanding some ambiguity or inaudibility, as long as the recordings are probative." *See United States* v. *Arango-Correa*, 851 F.2d 54, 58 (2d Cir. 1988) (collecting cases).

### B. Discussion

Kloszewski does not dispute that the February 26 Recording, in which he and his co-conspirators discuss the firearms that were stolen in Florida and sold in New York and elsewhere, is clearly probative. Instead, without identifying any specific portions of the recordings, his counsel claims that "[d]uring several key portions of the conversation the microphone being used by the cooperating witness appears to be covered in some manner, as the recording of the conversation becomes unintelligible." (Joyce Aff. at 1.). A review of the February 26 Recording belies such a claim. In the February 26 Recording, CC-3 can be heard discussing the $1,000 that she gave to the defendant "for the first transaction . . . for the AK and the rifles and that shit" and the defendant can be clearly heard asking CC-3, "You still haven't sold everything up there yet?" (February 26 Recording at 45:45-46:31.[1]) When the defendant, CC-3, and CC-4 meet with CC-5, they can be heard, again, discussing the firearms sold in New York and the firearms and ammunition they believed were missing. (February 26 Recording at 1:07-1:15.) Moreover, CC-5 can be heard explaining to the defendant, CC-3 and CC-4 that another co-conspirator sold the "AK" and two "fully loaded drums" that they had stolen. (February 26 Recording at 1:20-1:22.) Should the Government elect to use the February 26 Recording at trial, it would be admissible. *See United States* v. *Siddiqi*, No. 06 Cr. 377, 2007 WL 3125313, at *2 & n.1 (S.D.N.Y. Oct. 23, 2007) (admitting recording even where during portions of the recording, "the sound of voices is just barely audible amidst the background din

---

[1] For the Court's convenience, the Government has hand delivered a copy of the February 26 Recording to the Court.

of passing traffic" and where "the sound of sirens almost completely drowns out the participants' voices."); *see also United States* v. *Hemmings*, 482 Fed. App'x 640, 642-43 (2d Cir. 2012) (affirming district court's decision to admit recordings that contained inaudible portions).

The defendant's suggestion that the February 26 Recording "was intentionally spoiled by an agent of the Government" is entirely meritless. (Joyce Aff. at 1.) As detailed above, the defendant's claim that "key portions of the conversation. . . [are] unintelligible" is simply incorrect. Accordingly, there is absolutely no basis for a spoliation claim. For all of these reasons, the defendant's motion for an audibility hearing should be denied.[2]

## II.  THE COURT SHOULD DENY KLOSZEWSKI'S REQUEST FOR A BILL OF PARTICULARS

The defendant also seeks a bill of particulars without making any showing for the need for such a request. Despite the Complaint in this case, which details the evidence against the defendant, and the Rule 16 discovery provided to the defendant, which includes three recordings of the defendant discussing firearms sales and/or proceeds as well as copies of pre-recorded buy money recovered from the defendant, the defendant contends that he is entitled to a bill of particulars stating the "precise date, time and location for each of the charged offenses," and the "substance of the defendant's conduct encompassed by each of the charges." (Joyce Aff. at 2.) As detailed below, the Complaint, Indictment, and discovery produced to the defendant provide sufficient information about the nature of the charges to enable the defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense.

---

[2] To the extent the Court wishes to hold an audibility hearing, the Government submits that such a hearing is appropriately held prior to trial after the Government has identified which, if any, of the recordings it will use at trial. *See United State* v. *Canty*, 971 F. Supp. 687, 696 (N.D.N.Y. 1997) (ordering audibility hearing be "conducted immediately before trial").

### A. Applicable Law

Rule 7(f) of the Federal Rules of Criminal Procedure permits the Court to direct the Government to file a bill of particulars. "The purpose of a bill of particulars is to supplement the allegations in the indictment when necessary to (1) enable the defendant to prepare his defense, (2) avoid unfair surprise to the defendant at trial, and (3) preclude a second prosecution of the same offense." *United States* v. *Mandell*, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010); *United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A "bill of particulars is not an investigative tool for the defendants." *United States* v. *Johnson*, 21 F. Supp. 2d 329, 339 (S.D.N.Y. 1998). "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States* v. *Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989). "The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories." *United States* v. *Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001). Specifically, "demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied." *United States* v. *Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001).

"The important question is whether the information sought is *necessary*, not whether it is helpful." *United States* v. *Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990), *aff'd sub nom. United States* v. *Skowronski*, 968 F.2d 242 (2d Cir. 1992) (emphasis added). In the context of conspiracy allegations, "the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly. It is well settled that defendants need not know the means by

8

which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts." *Feola*, 651 F. Supp. at 1132. Thus, as the Second Circuit has stated, "[t]he Government need not, when charging conspiracy, set out with precision each and every act committed by the conspirators in the furtherance of the conspiracy." *United States* v. *Cohen*, 518 F.2d 727, 733 (2d Cir. 1975). A bill of particulars is not required when the information the defendant seeks is provided in discovery. "If the information the defendant seeks 'is provided in the indictment or in some acceptable alternate form,' such as discovery or other correspondence, no bill of particulars is required." *United States* v. *Binday*, No. 12 Cr. 152, 2012 WL 6135013, at *11 (S.D.N.Y. Dec. 10, 2012) (citing *United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)).

    **B. Discussion**

    The defendant requests particulars as to the specific date, time, and location –when and where – he allegedly engaged in criminal activity. (Joyce Aff. at 3.) This is precisely the type of information that courts have held to be beyond the scope of a bill of particulars. *See United States* v. *Torres*, 901 F.2d 205, 233-34 (affirming denial of motion for bill of particulars where defendant sought date he joined conspiracy, identity of coconspirators, and precise dates and locations of his overt acts); *United States* v. *Calvente*, No. S3 12 Cr. 732, 2013 WL 4038952, at *1 (S.D.N.Y. July 26, 2013) ("[A] bill of particulars is not properly ordered to advise a defendant of the 'whens,' 'wheres,' and 'with whoms' of the charged conspiracy."). In any event, the Complaint and discovery in this case details for the defendant where and when the firearms sales took place, and details the defendant's conduct as well as the conduct of his co-conspirators.

    Likewise, the extensive discovery in this case undermines the necessity for a bill of particulars as to "the precise acts which the defendant allegedly committed. " (Joyce Aff. at 3.)

9

As the Second Circuit said in *Bortnovsky*, "[i]f the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." 820 F.2d at 574. The Complaint and the discovery produced to the defendant includes the dates of controlled purchases of firearms from the defendant's co-conspirators, recordings of the defendant discussing those sales, and the amount that he was to be paid for those firearms sales. The discovery produced clearly puts the defendant on notice as to the details of the firearms trafficking conspiracy in which he participated.

Accordingly, the defendant's request for a bill of particulars should be denied.

### III. NO ADDITIONAL DISCOVERY IS WARRANTED AT THIS TIME

The defendant also makes a variety of discovery-related requests, including but not limited to "all evidence which is exculpatory or favorable to the defendant in accordance with *Brady* v. *Maryland*, 373 U.S. 83 (1963)," and "all evidence which tends to impeach the credibility of any prosecution witness in accordance with *Giglio* v. *United States*, 405 U.S. 150 (1972)." (Joyce Aff. at 4-5.) The Government is aware of its discovery obligations, has complied with them to date, and will continue to comply with them as the case progresses. Accordingly, the defendant's discovery-related requests should be denied.

Pursuant to the Due Process clause of the United States Constitution, the Government has a duty to disclose favorable evidence to the accused where such evidence is "material" either to guilt or to punishment, *see Brady* v. *Maryland*, 373 U.S. 83, 87 (1963), even if the evidence is only in the possession of the investigating officers and not in the direct possession of the prosecutors, *see Kyles* v. *Whitley*, 514 U.S. 419 (1995). Favorable evidence includes evidence that tends to exculpate the accused, *see id.*, as well as evidence that is useful to impeach the credibility of a government witness. *See Giglio* v. *United States*, 405 U.S. 150, 154 (1972). As

the Court of Appeals has explained, *Brady* and *Giglio* material must be provided by the Government "in time for its effective use at trial." *In re United States* (*U.S.* v. *Coppa*), 267 F.3d 132, 146 (2d Cir. 2001).

As to prior statements by Government witnesses, the Jencks Act provides in pertinent part that

> [i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

18 U.S.C. § 3500. Courts in this Circuit have consistently held that they lack the power to mandate early production of Jencks material. *See, e.g.*, *United States ex rel. Lucas* v. *Regan*, 503 F.2d 1, 3 n.1 (2d Cir. 1974); *In re United States*, 834 F.2d 283, 287 (2d Cir. 1987). And courts in this District have routinely found that providing this information as little as one day in advance of a witness's testimony is sufficient to avoid unnecessary delay. *E.g., United States* v. *Ruiz*, 702 F. Supp. 1066, 1069-70 (S.D.N.Y. 1989) (approving Government agreement to provide impeachment material along with 3500 material on day before witness testifies), aff'd, 894 F.2d 501 (2d Cir. 1990).

As stated in the Government's discovery letter to defense counsel, the Government has complied with its obligations pursuant to *Brady* and is not aware of any additional *Brady* material in this case. The Government does, however, recognize its continuing obligation to disclose all such material, and to make a diligent search for any relevant material that may be in the possession of the "prosecution team," including investigating agents and officers. The Government will continue to provide timely disclosure of any *Brady* material if and when any

11

such material comes to light.  Courts in this Circuit routinely deny specific requests for *Brady* material where, as here, the Government has made a good-faith representation to the court and defense counsel that it recognizes and has complied with its disclosure obligations under Brady. *See, e.g., United States* v. *Gallo*, 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999) (denying defendant's motion to compel production of purported *Brady* material based on Government's representations that "it is aware of its obligations under *Brady* . . . and will produce any *Brady* material to the defense well before trial"); *United States* v. *Perez*, 940 F. Supp. 540, 553 (S.D.N.Y. 1996) (same).

With regard to impeachment material, the courts in this Circuit have repeatedly refused to compel disclosure of impeachment or *Giglio* material well in advance of trial, and the defendant has provided no specific or compelling basis for early disclosure here.  *See United States* v. *Nixon*, 418 U.S. 683, 701 (1974) (noting that the "need for evidence to impeach witnesses is insufficient to require its production in advance of trial"); *Gallo*, 1999 WL 9848, at *7-8 (denying defendants' motions to require the early production of *Giglio* and 3500 material); *United States* v. *Mejia*, No. 98 Cr. 4, 1998 WL 456257 at *1 (S.D.N.Y. Aug. 5, 1998); *United States* v. *Gutierrez-Flores*, 1994 WL 558034, at *3 (S.D.N.Y. Oct. 11, 1994).  Nevertheless, in order to ensure that defense counsel is able to identify and address any potential *Giglio* issues contained in Jencks Act material, and otherwise prepare to defend against the charges set forth in the Indictment, the Government will make its best efforts to produce its § 3500 material one week before any trial—well before the statutory deadline.[3]

---

[3] As part of his discovery requests, the defendant requests "the video contained in the phone of the cooperating witness which is referred to by the cooperating witness during the meeting of February 26, 2016." (Joyce Aff. at 5.) The video referred to by CC-3 during the February 26 Recording is not within the Government's possession, custody, or control.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the defendant's motion in its entirety.

Dated: New York, New York
June 3, 2016

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney for the
                              Southern District of New York


By: ____s/_____
      Gina Castellano
      Assistant United States Attorneys
      (212) 637-2224

13