UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/7/17

------------------------------------------------------------- X

UNITED STATES OF AMERICA,                    :
                                             :   **OPINION AND ORDER**
            v.                               :   **DENYING DEFENDANT'S**
                                             :   **POST-TRIAL MOTION**
GUSTAV KLOSZEWSKI,                           :
                                             :   16 Cr. 200 (AKH)
                   Defendant.                :
                                             :
                                             :

------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

　　　　　Defendant Gustav Kloszewski was convicted by a jury of all four counts in the

indictment: conspiracy to traffic firearms, aiding and abetting firearms trafficking, conspiracy to

commit Hobbs Act robbery, and narcotics conspiracy. With respect to Count IV, narcotics

conspiracy, the jury specifically found that Kloszewski agreed to a conspiracy involving five or

more kilograms of cocaine. Kloszewski moves for a judgment of acquittal pursuant to Rule 29

on the narcotics conspiracy count, and moves on three separate grounds for a new trial pursuant

to Rule 33 of all counts. Kloszewski's motion is denied.

## DISCUSSION

### I.　Defendant's Motion for Judgment of Acquittal on Count Four is Denied

　　　　　Kloszewski moves for a judgment of acquittal on Count IV, narcotics conspiracy,

pursuant to Rule 29 of the Federal Rules of Criminal Procedure, on the ground that "the evidence

is insufficient to sustain a conviction." Fed. R. Crim. P. 29. Count IV charged that Kloszewski

conspired to distribute or possess with the intent to distribute five kilograms or more of mixtures

and substances containing a detectable amount of cocaine. Kloszewski argues that no reasonable jury could have found beyond a reasonable doubt that he agreed to a narcotics conspiracy involving five kilograms or more of cocaine.

When evaluating a sufficiency challenge, the court "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks omitted). A jury's verdict "must be upheld if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011) (internal quotation marks omitted). "[A] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004) (internal quotation marks omitted).

There was sufficient evidence for a jury to find beyond a reasonable doubt that Kloszewski entered into a conspiracy to distribute or possess with intent to distribute five or more kilograms of cocaine. Multiple witnesses for the Government, including DEA special agents, testified that the terms "brick" and "block" are typically used to refer to a kilogram of cocaine or heroin; that "coke" is slang for cocaine; and that a kilogram of cocaine sells for approximately $38,000 in New York and $30,000 in Florida. Tr. 116-17, 119, 231, 405-406.

The Government introduced into evidence recordings of multiple conversations in which Kloszewski discussed with Sian Stafford, a co-conspirator turned Government cooperator, a plan to rob the house of a drug dealer in Florida. During those conversations, Kloszewski:

- Stated that the drug dealer obtains "blocks" from the "islands."
- Confirmed Stafford's statement that "eight hundred and eighteen thousand dollars" is "like fifty bricks," by responding, "Yeah, yeah but he gets it."
- Stated that $825,000 "went to … the Bahamas."
- Stated that "there should be some kilos of Coke" on the drug dealer's property.
- Agreed with Stafford's statement that "they're definitely gonna have it there," by responding, "Yeah then if, if the shipment made it back."
- Stated that "whether it's product, cash or whatever it's gotta go…"
- Stated that "about a week ago, those buckets were shipped out, he sent them down to the Bahamas, 825,000, that was sent down to the Bahamas, where he gets his coke from. So he should have his, his, shipment of coke over there or cash for it."

GX 202-T at 7; GX 205-4-T at 4; GX 205-9-T at 11-12.

These statements, when viewed in the "light most favorable to the Government," *Coplan*, 703 F.3d at 62, and when considered "as a whole rather than piecemeal," *Persico*, 645 F.3d at 104, provided a sufficient evidentiary basis for the jury to find beyond a reasonable doubt that Kloszewski agreed to a narcotics conspiracy involving five or more kilograms of cocaine. It was reasonable for the jury to conclude from these statements that Kloszewski anticipated that $825,000 worth of cocaine, which amounts to much more than five kilograms, would be recovered during the planned robbery. The fact that Kloszewski did not know the exact amount of cocaine that was to be found at the drug dealer's house does not change this result, for a "defendant need not have actual knowledge of the exact quantity of narcotics involved in the

3

entire conspiracy; rather, it is sufficient if he could reasonably have foreseen the quantity involved." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006). Here, given Kloszewski's belief that the drug dealer had recently shipped out $825,000 to the Bahamas in exchange for cocaine, it was reasonably foreseeable to Kloszewski that five kilograms or more of cocaine were likely to be found at the house. Nor does it matter that there was a possibility that cash might be found at the house instead of cocaine; what matters is that Kloszewski conspired to steal the cocaine in the event it was found at the house, as evidence by Kloszewski's statement that "whether it's product, cash or whatever it's gotta go[.]" GX 202-T at 7; *see also United States v. Rosengarten*, 857 F.2d 76, 79 (2d Cir. 1988) ("[T]o be actionable, a conspiracy need not be carried to a successful conclusion.").

Accordingly, Kloszewski's motion for judgment of acquittal on Count IV is denied.

## II.   Defendant's Motion for a New Trial is Denied

Defendant also moves for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, under which a "court may grant a new trial if the interests of justice so require." Fed. R. Crim. P. 33. Although a trial court "has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," courts "nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson*, 246 F.3d at 134.

Kloszewski presents three arguments: (a) the Court erred by admitting into evidence recordings of conversations that Kloszewski had with individuals who did not testify at trial, resulting in a violation of his Sixth Amendment right to confront witnesses; (b) venue in the

4

Southern District of New York was improper; and (c) the Court erred by dismissing a tardy juror on the third day of trial. These arguments are without merit.

### a. The Admission of Recordings of Defendant's Conversations with Government Cooperators Did Not Violate the Confrontation Clause

During the trial, the Court admitted into evidence audio recordings of telephonic and in-person conversations between Kloszewski and co-conspirators Sian Stafford and Blake Hann. Kloszewski made numerous inculpatory statements during these conversations, and the recordings played a central role in the Government's case. At the time of these conversations, Blake and Hann were cooperating with the Government. Neither Blake nor Hann testified at trial.

Before allowing the Government to play these recordings to the jury, I gave the following limiting instruction, which the Government drafted and Kloszewski consented to:

> The government is about to play a recording of a phone call in which two individuals who are cooperating with the government participated in the call at the direction of law enforcement. These two cooperating witnesses are Sian Stafford and Blake Hann. Nothing said by Ms. Stafford and Ms. Hann on the recording is to be considered by you to be true. Only statements made by the defendant on this recording are to be considered for their truth. The statements of Ms. Stafford and Ms. Hann are simply being admitted as evidence to provide you with a context in which to evaluate and understand any statements by the defendant on the recording. So what Stafford and Hann say is just to explain the context. The only thing that's relevant is what the defendant is saying, and the degree of relevance is up to you to decide. Clear?

Tr. 107. Kloszewski contends that the statements of Stafford and Hann were hearsay and were "testimonial" in nature, and that his inability to cross-examine Stafford and Hann violated the Sixth Amendment's Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 53–54 (2004) (Confrontation Clause bars "admission of testimonial statements of a witness who did not

appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.").

This argument fails because the statements of Stafford and Hann were not testimonial in nature, as they were introduced for purposes other than establishing the truth of the matter asserted. "Only [testimonial] statements ... cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). "It has long been the rule that '[s]o long as ... statements are not presented for the truth of the matter asserted, but only to establish a context ..., the defendant's Sixth Amendment rights are not transgressed.' Nothing in *Crawford v. Washington* is to the contrary." *United States v. Paulino*, 445 F.3d 211, 216 (2d Cir. 2006) (quoting *United States v. Barone,* 913 F.2d 46, 49 (2d Cir. 1990)); *see also United States v. Stewart,* 433 F.3d 273, 291 (2d Cir.2006) ("*Crawford* expressly confirmed that the categorical exclusion of out-of-court statements that were not subject to contemporaneous cross-examination does not extend to evidence offered for purposes other than to establish the truth of the matter asserted.").

As the Second Circuit recently explained in *United States v. Cimino*, 639 F. App'x 26 (2d Cir. 2016):

> The admission of recordings that contain the voice of the defendant and a confidential informant does not violate the Confrontation Clause where the informant's statements are used only to provide context to the defendant's statements, and not for the truth of the matter asserted, as such statements are nontestimonial in nature. Nothing in our prior cases establishes, as Cimino suggests, that recorded statements made by a confidential informant, used at trial to place the defendant's own statements in context, become testimonial when the recordings constitute the main evidence against the defendant or when the confidential source is unavailable to testify.

639 F. App'x at 27. The Second Circuit's reasoning in *Cimino* directly refutes Kloszewski's argument here. As the Court's limiting instruction made clear to the jury, Stafford and Hann's

6

statements were admitted not for the truth, but solely for the purpose of placing the defendant's own statements in context. Accordingly, they were not testimonial in nature and their admission into evidence did not violate the Confrontation Clause.

Kloszewski also argues that the limiting instruction given to the jury was insufficient to prevent the jury from considering Stafford and Hann's statements for the truth. But counsel for the defendant consented to this instruction, even though he objected to the introduction of the recordings into evidence. Tr. 41.

### b. Venue Was Proper For Each of the Four Counts

The Government must "prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. Where the conduct giving rise to the offense was committed in more than one district, venue is proper in "any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237. Thus, where "the offense consisted of distinct parts which have different localities the whole may be tried where any part can be proved to have been done." *United States v. Brennan*, 183 F.3d 139, 145 (2d Cir. 1999) (internal quotation marks omitted). In a case involving multiple counts, such as this one, the Government must prove that venue is proper for each count. *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989). "Because venue is not an element of a crime, the government need establish it only by a preponderance of the evidence." *United States v. Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005). A court must review the "sufficiency of the evidence as to venue in the light most favorable to the government, crediting every inference that could have been drawn in its favor." *United States v. Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005) (internal quotation marks omitted).

Three of the four counts alleged a conspiracy. Venue is proper with respect to a conspiracy count "in any district in which an overt act in furtherance of the conspiracy was

7

committed." *United States v. Tzolov*, 642 F.3d 314, 320–21 (2d Cir. 2011) (internal quotation marks and citation omitted). "The defendant need not have been present in the district, as long as an overt act in furtherance of the conspiracy occurred there." *United States v. Naranjo*, 14 F.3d 145, 147 (2d Cir. 1994). Additionally, "the law does not require a defendant to have actual knowledge that an overt act will occur in a particular district to support venue at that location. At most, it asks that the overt act's occurrence in the district of venue have been reasonably foreseeable to a conspirator." *United States v. Rommy*, 506 F.3d 108, 123 (2d Cir. 2007).

### i.  Venue Was Proper For Counts One and Two

Count One charged the defendant with conspiracy to traffic firearms. Venue is satisfied for this count because the object of the conspiracy was to sell firearms without a license in the Southern District of New York. Tr. 58, 62-66, 251-55. It is irrelevant that Kloszewski himself did not enter the Southern District of New York to sell the firearms; it suffices that these sales were reasonably foreseeable to him. Kloszewski was in frequent phone and text contact with co-conspirators in New York both before and after these sales, *see* GX-902-A, and he expressed no surprise when Stafford, one of the co-conspirators, told him during a phone call that it was "freezing" where she was, that it would take her several days to drive to Florida, and that she would have to "come back up" to sell additional firearms. GX 201-T at 1-5.

Count Two charged the defendant with aiding and abetting others in trafficking firearms without a license. When aiding and abetting is charged, "venue is proper where the defendant's accessorial acts were committed *or* where the underlying crime occurred." *United States v. Smith*, 198 F.3d 377, 383 (2d Cir. 1999). Venue is satisfied for Count Two because the underlying crime – illegal firearms trafficking – occurred in the Southern District of New York, and Kloszewski aided and abetted that crime. *See id.* ("Even if [the defendant] committed all of his accessorial acts in the Eastern District of New York, [the defendant] nevertheless would be

triable in the Southern District because 18 U.S.C. § 2 alters the common law rule to provide for an *additional* venue where ... the principal ... acted.").

### ii. Venue Was Proper For Counts Three and Four

Count Three charged the defendant with conspiring to commit Hobbs Act robbery and Count Four charged the defendant with conspiring to distribute or possess with intent to distribute marijuana and five kilograms or more of cocaine. Although the objects of both of these conspiracies were to be carried out in Florida, Stafford placed a telephone call to Kloszewski on February 24 while in the Southern District of New York, and Kloszewski used that phone call to further the conspiracy. It is well-established that "[p]hone calls can constitute overt acts in furtherance of a conspiracy." *Naranjo*, 14 F.3d at 147. It is true that Stafford was cooperating with the Government at the time she placed this call, but "a telephone call placed by a government actor within a district to a conspirator outside the district can establish venue within the district provided the conspirator uses the call to further the conspiracy." *Rommy*, 506 F.3d at 122; *see also United States v. Abdallah*, 528 F. App'x 79, 81 (2d Cir. 2013) (call between government cooperator and defendant "was sufficient to establish venue because it was an overt act in furtherance of the conspiracy" where defendant confirmed terms of a fraudulent scheme during the call).

Here, Kloszewski used the February 24 phone call to firm up plans with Stafford to case the location of their planned robbery of the drug dealer's house. GX 201-T at 2. During this same call, Kloszewski also suggested that a particular day would be "good" to carry out this robbery because "it's supposed to be cold Friday" and "everybody else's window will be closed." *Id.* These statements, considered in connection with numerous subsequent statements made by Kloszewski regarding the conspiracy to rob the drug dealer's house of money and/or

9

narcotics, provided a sufficient basis for the jury to find, by a preponderance of the evidence, that Kloszewski used the phone call to further the robbery and narcotics conspiracies.

### iii.  The Court Did Not Abuse Its Discretion by Dismissing Juror #2

Lastly, Kloszewski renews his challenge of my decision to dismiss a juror on the third day of trial because that juror came late, and had previously been late. I have already addressed this issue at length in a written opinion, and held that dismissal of the juror was well within my discretion. *See United States v. Kloszewski*, 2017 WL 2601888, at *1 (S.D.N.Y. June 15, 2017) (Hellerstein, J.). Kloszewski's instant motion largely rehashes arguments that I considered and rejected in my prior opinion.

"Rule 24(c) of the Federal Rules of Criminal Procedure authorizes a trial judge to 'replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties.'" *United States v. Gambino*, 951 F.2d 498, 502 (2d Cir. 1991) (quoting Fed. R. Civ. P. 24(c)). "Th[e] substitution of an alternate juror for reasonable cause is the prerogative of the court and does not require the consent of any party. A reviewing court should not disturb the trial judge's exercise of discretion in dismissing a juror unless there is a bias or prejudice to the defendant." *Id.* at 503 (internal quotation marks and citation omitted).

On the morning of the third day of trial, I concluded, based on the information available to me at the time, that delaying the trial due to the absence of a juror would not only burden the court, but would also burden the remaining jurors, many of whom had previously raised concerns about when the trial was expected to finish in light of other obligations they had. I also found no basis to conclude that replacing this particular juror with an alternate would compromise the fairness or impartiality of the jury, or otherwise prejudice the defendant. This

10

decision was well within my discretion. *See United States v. Chang*, 131 F.3d 132 (2d Cir. 1997) ("[T]he district court did not abuse its discretion by replacing a single late juror because there was no evidence of undue impact on the jury." (internal quotation marks omitted)); *United States v. Domenech*, 476 F.2d 1229, 1232 (2d Cir. 1973) (affirming district court's decision to dismiss a juror who was ten minutes late and stating "we would have to strain much too far to discern any bias or prejudice against the defendant in this episode.").

Kloszewski additionally argues that my decision to excuse juror number 2 was inconsistent with my refusal to excuse potential jurors during voir dire because of their personal obligations, but the context of voir dire is entirely different: the jury had not yet been empaneled and the trial had not yet begun. Kloszewski also points out that I did not excuse jurors on the second day of trial who were late due to train delays, but a situation in which multiple jurors are delayed due to circumstances beyond their control is entirely different from a situation in which a single juror is absent as a result of a voluntary decision, albeit an understandable one, to prioritize a job interview over jury service.

## CONCLUSION

For these reasons, Kloszewski's motion is denied. The Clerk shall terminate the motion (Dkt. No. 181), as well as all other motions filed in connection with this trial, all of which were resolved during the course of the trial and are therefore moot (Dkt. Nos. 147, 159, 165, 166, 168).

SO ORDERED.

Dated:  September 7, 2017
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge